# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| Louis Vuitton Malletier, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action H-10-2821 |
| | § | |
| Texas International Partnership, *et al.,* | § | |
| | § | |
| *Defendants.* | § | |

## Order

Pending before the court are (1) Defendants Ruben Kloda, TI-II Limited Partnership, Texas International Partnership, Ltd., Daniel S. Whitebook's ("Defendants") motion to compel production of documents that plaintiff Louis Vuitton Malletier ("Louis Vuitton") withheld from production as privileged or protected by the work-product doctrine (Dkt. 67); (2) Defendants' supplement to their motion to compel (Dkt. 74), which seeks an order compelling Louis Vuitton to provide an updated privilege log that lists all redacted documents; and (3) Defendants' reply to Louis Vuitton's court-ordered response regarding redactions, in which Defendants seek an order for Louis Vuitton to produce unredacted versions of the redacted documents it has produced in camera and an order requiring production of all documents wrongfully claimed privileged or where the privilege has been waived (Dkt. 78). After considering the motion, supplement, responses, replies, argument of counsel, documents filed in camera, and applicable law, the court is of the opinion that the motion to compel should be GRANTED IN PART AND DENIED IN PART, the request for an order compelling Louis Vuitton to provide a privilege log listing redacted documents should be DENIED AS MOOT, the request that the court review unredacted versions of redacted documents produced

by Louis Vuitton should be DENIED, and the request that the court order production of these documents should be DENIED.

# I. BACKGROUND

On April 2, 2012, the court reopened discovery for the limited purpose of deposing certain witnesses, who were either recently named or potentially had important information about a recent raid at the Harwin Discount Center, which is the shopping center that is at issue in this litigation. Defendants assert that they sent out deposition notices that included a subpoena duces tecum requesting documents relating to the recent raid and communications between Louis Vuitton, its investigators, and law enforcement. Dkt. 67. Louis Vuitton produced additional, non-privileged, non-work-product documents related to the raid, and it supplemented its earlier production of the investigators' communications with law enforcement. Dkt. 70. However, Louis Vuitton refused to produce its communications with its investigators, claiming that the communications were protected from production by the work-produce doctrine. *Id.* Louis Vuitton claimed it had consistently refused to produce such information during this litigation. *Id.* Defendants moved for an order compelling production of the documents, which they claim are "in no way privileged, and even if they were, [Louis Vuitton] has waived any privilege claim by producing some communications with its Investigators and not others." Dkt. 67. Defendants pointed out that Louis Vuitton had not provided a privilege log as required by the Federal Rules of Civil Procedure. *Id.*

The court held a hearing on the motion on April 24, 2012. Dkt. 72. The parties noted that neither party had produced a privilege log in this case, and Louis Vuitton indicated that its failure to provide a privilege log was inadvertent—it had simply fallen through the cracks. The court ordered both parties to provide privilege logs to opposing counsel and the court within seven days if they were withholding documents and to provide copies of the withheld documents to the court

under seal for in camera review.  *Id.*  Louis Vuitton provided a privilege log and copies of the withheld documents as ordered.  *See* Dkt. 73.

Unfortunately, Defendants Louis Vuitton's privilege log did not contain everything Defendants were expecting.  Defendants filed a supplement to their motion to compel in which they raised concerns about documents that Louis Vuitton had produced that had clearly been redacted but were not included in the privilege log.  Dkt. 74.  The court ordered Louis Vuitton to file a response to the allegation that it failed to include previously produced documents containing redactions in its privilege log.  Dkt. 75.  Louis Vuitton responded that the redacted portions of the documents contained information that was either nonresponsive to the requests for production or irrelevant.  Dkt. 77.  Louis Vuitton also included a log of non-responsive redacted items in which it describes the redacted information in each redacted document it produced.  Dkt. 77, Exh. A.  This log reveals that most of the redacted information is either forwarding information in emails relating to gathering documents for requests for production or relates to investigations of stores that are not in the shopping center at issue in this litigation—Harwin Discount Center.  *Id.*

Defendants express concern that some of the redacted documents are not clearly marked as redacted and instead merely contain blank spots where the redacted information should be.  Dkt. 78.  Moreover, Defendants argue that Louis Vuitton should not be withholding information within these documents that it unilaterally believes is irrelevant.  *Id.*  And, Defendants state that Louis Vuitton's position that the redacted information in some of the redacted emails is merely forwarding information from investigators that is irrelevant is inconsistent with Louis Vuitton's position that other emails from investigators that were merely forwarding reports are work product.  *Id.*  Defendants request that the court order Louis Vuitton to provide unredacted copies of the redacted

documents to the court so that it may review them in camera to make sure that the redacted

information is indeed nonresponsive.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(b)(3)(A),

> [A] party may not discover documents and tangible things that are
> prepared in anticipation of litigation or for trial by or for another party
> or its representative (including the other party's attorney, consultant,
> surety, indemnitor, insurer, or agent).  But, subject to Rule 26(b)(4)
> [(expert discovery)], those materials may be discovered if:
> (I)      They are otherwise discoverable under Rule 26(b)(1) [i.e. are
> within the general scope of discovery]; and
> (ii)     The party shows that it has substantial need for the materials
> to prepare its case and cannot, without undue hardship obtain their
> substantial equivalent by other means.

Fed. R. Civ. P. 26(b)(3)(A).  "The burden of establishing that a document is work product is on the

party who asserts the claim, but the burden of showing that the materials that constitute work product

should nonetheless be disclosed is on the party who seeks their production."  *Hodges, Grant &*

*Kaufmann v. U.S. Gov't, Dep't of the Treasury*, 768 F.2d 719, 721 (5th Cir. 1985).  "The work

product doctrine focuses only on materials assembled and brought into being in anticipation of

litigation.  Excluded from work product materials . . . are '(m)aterials assembled in the ordinary

course of business, or pursuant to public requirements unrelated to litigation . . . .'"  *United States*

*v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982) (quoting 48 F.R.D. at 501).  Sometimes,

"determining whether a document is prepared in anticipation of litigation is a slippery task."  *Id.*  But

the general rule is that litigation "'need not be imminent . . . as long as the primary motivating

purpose behind the creation of the document was to aid in possible future litigation.'"  *Id.* (quoting

*United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981)).

4

"Factors that courts rely on to determine the primary motivation for the creation of a document include the retention of counsel and his involvement in the generation of the document and whether it was a routine practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance. . . . If the document would have been created regardless of whether litigation was expected to ensue, the document is deemed to have been created in the ordinary course of business and not in anticipation of litigation." *Elec. Data Sys. Corp. v. Steingraber*, No. 4:02 CV 225, 2003 WL 21653414, at *5 (E.D. Tex. July 9, 2003) (citing *Piatkowski v. Abdon Callais Offshore, L.L.C.*, No. 99-3759, 2000 WL 1145825, at * 2 (E.D. La. Aug. 11, 2000)).  It is not, however, "dispositive that the documents were prepared by plaintiffs and not by attorneys," as the rule "protects documents prepared by or for a party, as long as they are prepared in anticipation of litigation." *Id.* (citing *United States v. Nobles*, 422 U.S. 225, 238-39 (1975)).

## III. ANALYSIS

Louis Vuitton argues that the communications are protected by the work product doctrine because "the investigators were working at the direction of [Louis Vuitton] when preparing for or carrying out investigative work related to the Defendants and this lawsuit." Dkt. 70 at 8.  Defendants argue that the documents are not privileged because communications between Louis Vuitton and its investigators are not privileged and that even if they were privileged Louis Vuitton has waived protection because it has produced the investigators' reports.  Dkt. 67.  Louis Vuitton argues that there is no waiver because it has produce *reports*, not *communications*, and that, regardless, waiver applies only to items actually disclosed.  Dkt. 70.  Finally, Defendants complain that Louis Vuitton redacted certain documents that it did produce yet failed to include descriptions of the redacted information in its privilege logs.  Dkt. 74.  Louis Vuitton argues that the redacted information is

5

nonresponsive or irrelevant; however, it did provide a log describing the redacted information.  Dkt. 77 & Exh. A.

**A.    Are the Withheld Documents Protected by the Work-Product Doctrine?**

This case is similar to cases in which insurers retain investigators, as it appears that Louis Vuitton retains investigators on a regular basis and that their ordinary work involves investigating stores that are potentially engaging in the sale or distribution of counterfeit Louis Vuitton goods and sending reports to Louis Vuitton about the investigations.  "[C]ourts have routinely recognized that the investigation and evaluation of claims is part of the regular, ordinary, and principal business of insurance companies.  Thus, even though litigation is pending or may eventually ensue does not cloak such routinely generated documents with work product protection."  *Piatkowski v. Abdon Callais Offshore, L.L.C.*, No. 99-3759, 2000 WL 1145825, at *2 (E.D. La. Aug. 11, 2000). Generally federal courts require an insurer that is claiming its communications with its investigators were prepared in anticipation of litigation to "point to a 'critical factor that made it anticipate litigation . . . and offer specific facts demonstrating that the critical factor did indeed make the insurer deal with the insured in a different way.'" *Kansas City S. Ry. Co. v. Nichols Const. Co., L.L.C.*, No. 05-1182, 2007 WL 2127820, at *3 (E.D. La. July 25, 2007) (quoting *Stout v. Ill. Farmers Ins. Co.*, 852 F. Supp. 704, 706 (S.D. Ind. 1994)).  The party asserting privilege must show that "the primary motivating purpose behind the creation of the document was to aid in possible future litigation," considering factors such as the retention of counsel and his or her involvement in the generation of the document and whether it was routine to prepare such a document or it was instead prepared in response to a particular circumstance. *Electronic Data Sys. Corp.*, 2003 WL 21653414, at *4.  "If the document would have been created without regard to whether litigation was expected

to ensue, it was made in the ordinary course of business and not in anticipation of litigation." *Canter v. Cleco Corp.*, No. 08-0343, 2009 WL 902435, at *3 (E.D. La. Mar. 30, 2009).

Here, Louis Vuitton has offered little evidence to aid the court in determining when its communications with its investigators changed from being communications prepared in the ordinary course of business to being communications that were motivated by potential litigation. Clearly, once the lawsuit was initiated on August 9, 2010, any communications with regard to investigations of the sale or distribution of counterfeit Louis Vuitton merchandise at the Center are work product related to the ongoing litigation. However, several of the emails on Louis Vuitton's privilege log were sent more than a year before this lawsuit was filed. The earliest document withheld is dated April 8, 2009. It is described as an email "[f]orwarding investigative report and invoice regarding Geneva Gift." Dkt. 73-1. Also withheld are emails relating to All Bundy Shoes and New Sam Imports dated April 24, 2009 and May 7, 2009. *Id.* The next email on the log was sent on June 4, 2009, and the remainder of documents on the log are dated on or after June 4, 2009. The record reflects that on May 15, 2009—before the June 4, 2009, email was sent—Louis Vuitton's director of criminal enforcement sent a letter to Harwin Discount Center noting that certain stores in the Center were selling or distributing counterfeit Louis Vuitton merchandise, stating that "Louis Vuitton can institute a civil action for trademark counterfeiting, and other causes of action," asserting that the letter served "as formal notice to you that this illegal counterfeiting activity is taking place" at the Center, demanding that Defendants take immediate steps to stop the illegal activities, and warning that Louis Vuitton intended to hold Defendants "responsible for all damages to the fullest extent of the law and [was] prepared to commence appropriate legal proceedings to protect its valuable trademarks." Dkt. 31-6. Similar letters were sent on June 4, 2009, November 17, 2009, and December 1, 2009. *Id.* By April 30, 2010, outside counsel was involved. Louis Vuitton's

7

counsel sent Defendants a letter dated April 30, 2010, warning that "the Center, its owners, and its operators have significant monetary exposure to Louis Vuitton for their acts of contributory trademark infringement," noting that Louis Vuitton had obtained a "award of tens of millions of dollars in statutory damages in a contributory trademark infringement case" the previous year, and stating that "Louis Vuitton [was] prepared to take all actions necessary to protect its rights." Dkt. 31-4.  On July 16, 2010, Louis Vuitton's counsel sent another letter indicating that "[p]erhaps litigation may be the only way to get the Center, its owners, operators, former and current general and limited partners . . . to address the counterfeiting problem once and for all and to truly compensate Louis Vuitton." Dkt. 31-4.  Louis Vuitton filed its complaint on August 9, 2009. Dkt. 1.

These letters reflect that Louis Vuitton became increasingly more focused on pursuing litigation between the time the first letter was sent[1]—May 15, 2009—and the initiation of this lawsuit, but that, regardless, Louis Vuitton was clearly anticipating litigation by the time it sent the first letter.  Thus, any communications with its investigators regarding the shops in the Center on or after May 15, 2009, were prepared in anticipation of litigation and are work product.  However, Louis Vuitton has presented no evidence that it was communicating with its investigators in anticipation of litigation before May 15, 2009.  Accordingly, it has not carried its burden of proof to show that the pre-May 15, 2009 communications were made in anticipation of litigation rather than in the normal course of business.

---

[1]  The court notes that there may have been other letters sent before May 15, 2009, but the May 15 letter is the first letter the court has been able to locate through its review of the record. Louis Vuitton has not provided the court with any information relating to other letters in connection with the motion to compel.

**B.     Do Defendants Have a Substantial Need for These Documents?**

Defendants also assert that the work-product doctrine is merely a qualified privilege and that if the withheld correspondence provides "the only means through which Defendants can obtain admissible evidence crucial to this case, including how Plaintiff identified certain tenants at the Harwin Discount Center that allegedly sold infringing goods, the instructions Plaintiff gave to its Investigators regarding the scope of the investigations, the contents of the reports they generated, and when to enlist the assistance of law enforcement," then they have a substantial need for the information that overcomes the qualified privilege. Dkt. 71. The court has reviewed the documents in camera, and the documents do not contain admissible evidence crucial to Defendants' case. Accordingly, Defendants do not have a substantial need for these documents that overcomes the qualified privilege.

**C.     Did Louis Vuitton Waive Its Ability to Claim Privilege by Producing Reports?**

With regard to Defendants' assertion that Louis Vuitton waived any protection the communications may have had by disclosing the investigators' reports, disclosure of some documents does not necessarily destroy work-product protection for other documents of the same character. *See* Wright & Miller, Federal Practice and Procedure § 2024. Under Federal Rule of Evidence 502, waiver of attorney-client privilege or work product extends to other undisclosed communications only if the waiver was intentional, the disclosed and undisclosed communications involve the same subject matter, and they ought to in fairness be considered together. The court is not convinced that fairness dictates that Defendants should have access to the emails forwarding investigators' reports along with the reports. Accordingly, even if the reports were entitled to work-product protection and Louis Vuitton waived the qualified privilege by disclosing the reports, that waiver does not extend to the withheld emails.

**D.      Did Louis Vuitton Improperly Fail to Include Redacted Documents on Its Log?**

The only documents Louis Vuitton included in its privilege log are those that it entirely withheld.  Dkt. 73-1.  Defendants contend that Louis Vuitton should have also included descriptions of redacted information in documents that Louis Vuitton produced that had been redacted, and Defendants complain that they could not even tell if some of the documents produced by Louis Vuitton were redacted because the documents simply contain blank spots where the redactions are.  Dkt. 78; *Compare* Dkt. 78, Exh. A (containing a stamp of the word "redaction" where information was redacted), *with* Dkt. 78, Exh. B (Bates No. LV001113) (having blank white spots that could be redactions or could simply be extra spaces in the document); *see* Dkt. 77, Exh. A (noting that the document LV001113 contains redacted forwarding information to Louis Vuitton's counsel).  Louis Vuitton subsequently provided a log describing the information it redacted in the produced documents, and it claims all of this information is either irrelevant or nonresponsive.  Dkt. 77 & Exh. A.  Defendants request that the court review the unredacted documents in camera to determine if the information is indeed nonresponsive or irrelevant.

The court need not review these documents because the descriptions provided by Louis Vuitton reveal that the information is either nonresponsive in that it relates to stores not located at the Center or is privileged attorney-client communication or work product.[2]  *See* Dkt. 77, Exh. A. However, the court certainly agrees that Louis Vuitton should not have produced documents that contain redactions but are not clearly marked as redacted.  Louis Vuitton is hereby ORDERED to

---

[2]   The only document that does not relate to Louis Vuitton's counsel's gathering of information for requests for production or to information about stores not located in the Center is an email containing a "thank you and phone number," which clearly would not be relevant to any of the issues in this case even if it is responsive to a broad request for production.  *See* Dkt. 77, Exh. A.

clearly mark all redacted documents as redacted and re-produce them to Defendants within fourteen days of this order.

### IV. Conclusion

Defendants' motion to compel (Dkt. 67) is hereby GRANTED IN PART AND DENIED IN PART. It is GRANTED with respect to the documents dated on or before March 15, 2009—namely, the documents containing the following Bates Numbers: LV_PRIV002000-01, LV-PRIV002002, and LV-PRIV002003-04. Louis Vuitton shall produce these documents within ten (10) days of this order. The motion to compel is otherwise DENIED, as the remainder of the documents are either work product or attorney-client communications.

Defendants' request for an order compelling Louis Vuitton to provide a privilege log listing redacted documents (Dkt. 74) is DENIED AS MOOT, the request that the court review unredacted versions of redacted documents produced by Louis Vuitton (Dkt. 78) is DENIED, and the request that the court order production of these documents (Dkt. 78) is DENIED. However, Louis Vuitton is ORDERED to clearly mark all redacted documents as "redacted" and re-produce them to Defendants within ten (10) days of the date of this order.

It is so ORDERED.

Signed at Houston, Texas on May 14, 2012.

_____
Gray H. Miller
United States District Judge

11